**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Tiber Creek Partners, LLC, | |
| Plaintiff, | COMPLAINT |
| v. | Case No. 23-cv-292 |
| Ellume USA LLC, Ellume Ltd ACN 141 767 660, Dr. Sean Parsons, individually and in his capacity as officer and director of Ellume USA LLC and Ellume Ltd CAN 141 767 660, and JOHN DOES 1-10, | |
| Defendant. | |

## COMPLAINT

Plaintiff Tiber Creek Partners, LLC ("Tiber Creek"), by and through its attorneys, Faegre Drinker Biddle & Reath LLC, hereby files this Civil Action Complaint against Defendants Ellume USA LLC ("Ellume USA"), Ellume Ltd ACN 141 767 660 ("Ellume Ltd"), Dr. Sean Parsons ("Parsons"), individually and in his capacity as officer and director of Ellume Ltd and Ellume USA, and John Does 1 through 10, and in support thereof avers as follows:

1

**INTRODUCTION**

1. In this action, Tiber Creek seeks a declaration that a purported modification to a services agreement is void *ab initio* because it was procured through fraud in an effort to shift Ellume USA's collectible debt to its insolvent parent entity, Ellume Ltd. Tiber Creek also seeks monetary damages from Defendant Sean Parsons for actual and/or constructive fraud.

2. For over thirteen years, Tiber Creek has assisted companies by providing know-how, strategic input, and supplemental executive staffing related to public health preparedness. Tiber Creek combines two highly-valued specialties—scientific acumen and expertise in the byzantine world of government contracting—to enable its clients to work with the United States government and others in addressing public health threats.

3. On May 6, 2020, Tiber Creek and Ellume USA entered into a written agreement whereby Tiber Creek agreed to provide business development support services and strategic consulting services in connection with Ellume USA's efforts to develop its diagnostic testing platform in partnership with the United States government. With Tiber Creek's assistance, Ellume USA received more than $290 million in government funding, which was used to build a new facility in Maryland and to develop and produce diagnostic testing materials.

4. Despite the influx of cash from the United States government, and unbeknownst to Tiber Creek, by early 2022, Ellume USA and its parent company, Ellume Ltd, were struggling financially. At that time, Ellume USA owed Tiber Creek in excess of $4.8 million in fees for services provided over nearly two years.

5. In April 2022, Defendants initiated a fraudulent scheme to move Ellume USA's debt to the books of Ellume Ltd, which was already insolvent and on the brink of voluntary administration proceedings in Australia.

6. Parsons, Ellume Ltd's directors, and others representing the Ellume entities proposed a modification to the May 6, 2020 agreement. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

7. On August 4, 2022, Tiber Creek and Ellume Ltd entered into a Deed of Variation purporting to modify the original agreement between Tiber Creek and Ellume USA.

8. Promptly after execution of the Deed of Variation, Ellume Ltd's board of directors voted to commence voluntary administration proceedings in Australia (akin to Chapter 11 Bankruptcy proceedings in the United States). Ellume Ltd had been insolvent for months, and the Deed of Variation was part of a scheme to shift debt from Ellume USA—a solvent United States entity that had received nearly $300 million in U.S. taxpayer money—to Ellume Ltd, an insolvent Australian entity far from the reach of Ellume USA's creditors. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9. In this action, Tiber Creek seeks a declaration that the Deed of Variation is void *ab initio* because it was procured by fraud. Tiber Creek also seeks damages against Parsons, both individually and in his capacity as an officer and director of the Ellume entities, due to Parsons' fraudulent representations and

fraudulent omissions that led to the execution of the modification of the contract and deprived Tiber Creek of its earned fees.

## PARTIES

10. Tiber Creek Partners, LLC, is a limited liability corporation organized and existing under the laws of the Commonwealth of Virginia. Tiber Creek's principal placed of business is in Reston, Virginia. Tiber Creek currently has two members, John Clerici and Karen Clerici, who reside in Reston Virginia and are citizens of the Commonwealth of Virginia.

11. Ellume USA LLC is a limited liability company organized and existing under the laws of the State of Delaware. Ellume USA's principal office is located at 4930 Executive Court South, Frederick, Maryland 21703, where it operates a manufacturing facility.

12. Ellume Ltd is organized and existing under the laws of Australia and is a citizen of Australia. It is also the sole member of Ellume USA.

13. Dr. Sean Parsons is an adult individual who resides in Australia and is a citizen of Australia. He is also the chief executive officer and director of Ellume USA and regularly works in Ellume USA's location in Frederick, Maryland.

14. John Does 1-10 are directors and officers of Ellume USA and/or Ellume Ltd who participated in the scheme perpetrated against Tiber Creek, and whose identities are not currently known to Tiber Creek. Tiber Creek will amend this Complaint to identify the specific individuals as their identities become known.

## JURISDICTION AND VENUE

15. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(2).

16. This dispute is between a citizen of this Commonwealth and citizens or subjects of a foreign state. The citizenship of a limited liability company is determined based on the citizenship of its members. Tiber Creek's two members are citizens of Virginia. Ellume USA's single member is a citizen of Australia. Ellume Ltd is a company organized and existing in Australia, and Parsons is an adult individual who resides in Australia.

17. The amount in controversy exceeds $75,000 exclusive of interest and costs. Although the precise amount in controversy will be established at trial, the value of the contract modification that Tiber Creek seeks to void, and Tiber Creek's fraud damages, are substantially in excess of $75,000.

18. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to the claim—including but not limited to Tiber Creek's performance of its obligations under the agreement with Ellume USA—occurred in this judicial district.

## FACTUAL BACKGROUND

### The Services Agreement

19. The Ellume entities are medical device companies that develop and manufacture diagnostic products for healthcare professionals and consumers. Using its proprietary technology, the Ellume entities created and now manufacture a suite of disposable test cartridges to test for infectious disease, including a COVID-19 antigen test for at-home use.

20. On or about May 6, 2020, during the height of the COVID-19 pandemic shutdowns, Tiber Creek and Ellume USA entered into a written Services Agreement ("Services Agreement") for the provision of services by Tiber Creek to Ellume USA. Parsons executed the Services Agreement on behalf of Ellume USA.

21. The Services Agreement included a provision through which Tiber Creek would be paid only if it successfully assisted Ellume USA in obtaining one or more contracts with the United States government. In that event, Ellume USA was obligated to pay Tiber Creek a percentage of each payment actually received by Ellume USA within 30 days after receipt of such funds from the government. The Services Agreement provided no other compensation of any kind to Tiber Creek other than payments to be made under this provision.

### Ellume USA Obtains Government Contracts

22. On or about October 7, 2020, after extensive business and scientific support provided by Tiber Creek, Ellume USA was awarded $30 million from the National Institute of Health Rapid Acceleration of Diagnostics initiative to accelerate the clinical testing and manufacturing capabilities for Ellume USA's COVID-19 antigen test.

23. This award was within the Service Agreement's Scope of Work and was received directly as a result of Tiber Creek's services.

24. On or about February 1, 2021, Ellume USA was awarded $231.8 million in funding from the Department of Defense in coordination with the Department of Health and Human Services to accelerate domestic production of Ellume USA's COVID-19 home tests.

25. This award was within the Service Agreement's Scope of Work and was received directly as a result of Tiber Creek's services.

### Ellume USA Fails to Timely Pay Tiber Creek

26. From the very beginning of the relationship, Ellume USA failed to make timely payments to Tiber Creek.

27. On or about March 1, 2021, Ellume USA received a payment of approximately $93 million under its contract with the Department of Defense.

Tiber Creek was directed to send an invoice for its fee, which it did. At Ellume USA's request, Tiber Creek also provided wire instructions for payment. However, Tiber Creek did not receive payment until September 2021—and even then it was only a partial payment—long after the 30-day period specified in the Services Agreement. The payment eventually received by Tiber Creek was made by Ellume USA.

28. In the fall of 2021, Ellume USA began experiencing major problems with its products, including high false positive rates for its COVID-19 diagnostic tests. These issues threatened the commercial viability of Ellume USA's diagnostic testing platform. During this time, Tiber Creek not only redoubled its efforts to assist Ellume USA with business and scientific support (including arranging for regulatory counsel for Ellume USA), but Tiber Creek refrained from demanding payment for past due fees.

29. Tiber Creek's temporary forbearance on pursuing past due amounts was an effort to be a good partner. Tiber Creek understood that Ellume USA would likely suffer short-term financial difficulties resulting from the need to identify and fix the problems causing the false positives and also due to missed revenue during this time.

**Deed of Variation**

30. By March 2022, Ellume USA had taken corrective action to address the issues relating to the high false positive rate. In addition, the Omicron variant had substantially increased the need for Ellume USA's COVID-19 diagnostic test. At that time, Ellume USA owed Tiber Creek in excess of $4.7 million in fees for Tiber Creek's services provided over the prior two years, and Tiber Creek's member, John Clerici, raised this issue with Defendant Parsons.

31. On or around March 29, 2022, Parsons, along with other directors of both Ellume Ltd and Ellume USA, acknowledged Tiber Creek's entitlement to payment and promised to pay what was owed. ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████ Parsons represented that Ellume Ltd intended to go public through an initial public offering of stock. ██████ ████████████████████████████████████████████████████████ ██████████████████████████

32. Thereafter, Parsons introduced Clerici to Ellume Ltd's outside financial advisor, whom Parsons represented was handling Ellume Ltd's finances after its chief financial officer had resigned from the company.

33. On behalf of Ellume Ltd, the advisor proposed that Tiber Creek enter into a "Deed of Variation" that would modify the Services Agreement between Ellume USA and Tiber Creek. The advisor later provided a draft Deed of Variation under which ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████

34. ████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████
████████████████████████
████████████████████████
██████████████████████████████
██████████████████████████████

35. 

36. 

37. The Deed of Variation was proposed by Ellume Ltd's financial advisors and drafted by Ellume Ltd's attorneys. Clerici, who was not represented by counsel and trusted Parsons, believed the Ellume parties as well as their representatives were acting in good faith.

38. By mid-April, Tiber Creek was prepared to execute the Deed of Variation. Ellume Ltd, however, delayed in finalizing the deed. Both Parsons and Ellume Ltd's external financial advisor informed Tiber Creek that approval of the directors of both Ellume Ltd and Ellume USA was required prior to execution.

39. After continued delays, in late July 2022, Clerici spoke to Parsons to check the status of the Deed of Variation (which was still awaiting sign-off from one member of Ellume Ltd's board of directors). Parsons told Clerici that the execution of the Deed of Variation was imminent. Parsons also indicated that Ellume USA and Ellume Ltd were experiencing some additional financial constraints, owing largely to the fact that the individual who was negotiating with the United States government over an additional $46.5 million contract had gone on vacation before securing the additional payment and was not capable, in Parson's view, of carrying out his duties. At Parson's request, Tiber Creek agreed to step in and lead the process to secure the additional revenue, and in fact did so in September 2022.

1    40.    On August 4, 2022, Tiber Creek and Ellume Ltd executed the Deed of Variation. ███████████████████████████████████████

**Deed of Variation Procured By Fraud**

41.   ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

42.   ████████████████████████████████████████████
███████████████████████████ His inquiries were met with silence and stonewalling.

43.   ████████████████████████████████████████████
█████████████████████████████████████ However, rather than disclose this fact—which would have scuttled negotiations over the Deed of Variation and derailed Ellume Ltd's effort to move the debt to the insolvent Australian entity—Parsons and others not only remained silent but repeatedly misrepresented that ████████████████████████████████████████
█████████████████████

44.   Days later, Ellume Ltd's board of directors voted to place Ellume Ltd into voluntary administration. On or about August 31, 2022, John Park and Joanne Dunn of FTI Consulting were appointed as external administrators of Ellume Ltd in the Australian voluntary administration proceedings.

45.   The details of Ellume Ltd's financial problems and its efforts to conceal those problems from Tiber Creek have only become apparent recently.

46. In a report to creditors dated December 12, 2022, Ellume Ltd's administrators revealed that Ellume Ltd was likely insolvent as early as May 2022 and remained so at all times through August 31, 2022.

47. The administrators also revealed for the first time in their December 12, 2022, report that the board of directors engaged an outside consulting firm to "undertake a review of the Company in October 2021 and as Safe Harbour advisers in December 2021." In Australia, members of a company's board of directors have a duty to prevent a company from trading while insolvent and can be found personally liable for the debts that the company incurs if there were reasonable grounds to suspect the company was insolvent, but can be protected from personal liability (*i.e.*, a safe harbour) if the company is undertaking a restructuring plan that is reasonably likely to result in a better outcome than immediately placing the company into external administration.

48. Thus, it appears that Ellume Ltd's directors contemplated that the company may be insolvent (or headed towards insolvency) as early as December 2021. This fact was never disclosed to Tiber Creek.

49. The administrators also cited as one of the "[e]xplanations for the Company's difficulties" "[u]nfavourable capital market conditions leading to lack of appetite for an Initial Public Offering ('IPO') or recapitalization." In fact, contrary to Parsons' representations, Ellume Ltd's board voted to delay an IPO in March 2022—***months*** before the Deed of Variation was executed, and before Parsons and Ellume Ltd's financial advisors offered ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

50. Parsons, directors of both Ellume Ltd and Ellume USA, and others acting on behalf of the Ellume entities repeatedly lied to Tiber Creek to induce it

into executing a sham Deed of Variation for the sole purpose of shifting Ellume USA's collectible debt to the Ellume Ltd on the eve of the latter's voluntary administration. Their goal was to string Tiber Creek along while it continued to provide valuable services to Ellume USA. All the while, Defendants had no intention of making good on their promises.

## COUNT I
## DECLARATORY RELIEF
## (AGAINST ELLUME USA AND ELLUME LTD)

51. Tiber Creek hereby incorporates by reference each of the allegations above as if set forth herein at length.

52. The Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), permits "any court of the United States, upon the filing of an appropriate pleading, [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

53. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

54. In order to induce Tiber Creek to execute the Deed of Variation, Ellume Ltd and Ellume USA, through Parsons, their respective directors and others, made numerous misrepresentations and omissions, including but not limited to:

- ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ In fact, Ellume Ltd was insolvent, and known to be insolvent, at the time of execution of the Deed of Variation, and Ellume Ltd had no intention of, or ability to, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉;

- Misrepresenting that Ellume Ltd intended to pursue an IPO, ███████████████████████████████████████. In fact, Ellume Ltd's board had decided to delay any attempt to pursue an IPO months prior to the execution of the Deed of Variation;

- Failing to disclose that Ellume Ltd was, and had for months been, insolvent;

- Failing to disclose that Ellume Ltd's directors had been operating under Safe Harbour provisions of Australia's insolvency laws.

55. Ellume Ltd knew that its financial position was untenable and that it would need to enter voluntary administration proceedings in Australia.

56. Ellume Ltd made the above misrepresentations and omissions to induce Tiber Creek to agree to the Deed of Variation as part of a plan to try to move Ellume USA's debt to Tiber Creek to the administration proceedings.

57. Had the truth been disclosed to Tiber Creek, Tiber Creek would not have agreed to the Deed of Variation.

58. Tiber Creek hereby seeks a judicial declaration that the Deed of Variation is void and unenforceable because it was procured by fraud.

59. Tiber Creek does *not* seek judgment against Ellume Ltd for the amounts owed under the Deed of Variation. To the contrary, Tiber Creek seeks a declaration that any and all purported obligations under that document are unenforceable and that the Deed of Variation itself is void *ab initio*.

**COUNT II**
**FRAUDULENT MISREPRESENTATION**
**(AGAINST PARSONS)**

60. Tiber Creek hereby incorporates by reference each of the allegations above as if set forth herein at length.

61.  Tiber Creed asserts this cause of action for fraudulent misrepresentation against Parsons, individually and in his capacity as an officer and director of both Ellume USA and Ellume Ltd.

62.  As noted above, in an attempt to induce Tiber Creek to enter into the Deed of Variation, Parsons made numerous misrepresentations and omissions, including but not limited to:

- ███████████████████████████████████████████████████████████████ In fact, Ellume Ltd was insolvent, and known to be insolvent, at the time of execution of the Deed of Variation, and Ellume Ltd had no intention of, or ability to, ██████████████████████████████████████████████████████, all of which was known by Parsons;

- Misrepresenting that Ellume Ltd intended to pursue an IPO, ████████████████████████████████████████████████████████████████. In fact, Ellume Ltd's board had, months prior to the execution of the Deed of Variation, decided to delay any attempt to pursue an IPO, all of which was known by Parsons;

- Failing to disclose that Ellume Ltd was, and had for months been, insolvent, which was known by Parsons;

- Failing to disclose that Ellume Ltd's directors had been operating under Safe Harbour provisions of Australia's insolvency laws, which was known by Parsons.

63.  Parsons made these misrepresentations and omissions with the intention of inducing Tiber Creek to execute the Deed of Variation.

64.  Tiber Creek was not aware of the falsity of these misrepresentations and had no knowledge of the omitted information.  Tiber Creek reasonably relied upon the information provided by Parsons.

65. These misrepresentations and omissions were material. Had the truth been disclosed, Tiber Creek would not have agreed to the Deed of Variation and instead would have promptly pursued its claims against Ellume USA.

66. As a result of its reliance on these misrepresentations and omissions, Tiber Creek has suffered significant damages. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ The precise amount of these damages will be proved at trial, but are expected to number in the millions of dollars in compensatory damages alone.

67. Parsons's conduct was so fraudulent, malicious, wanton, oppressive, and in reckless and/or conscious disregard of the rights of Tiber Creek that an award of punitive damages is appropriate.

**COUNT III**
**CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION**
**(AGAINST PARSONS)**

68. Tiber Creek hereby incorporates by reference each of the allegations above as if set forth at length.

69. As noted above, in an attempt to induce Tiber Creek to enter into the Deed of Variation, Parsons made numerous misrepresentations and omissions, including but not limited to:

- ████████████████████████████████████████████████████████████████████████████ In fact, Ellume Ltd was insolvent, and known to be insolvent, at the time of execution of the Deed of Variation, and Ellume Ltd ██████████████████████████████,

- ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅;
- Misrepresenting that Ellume Ltd intended to pursue an IPO, ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅. In fact, Ellume Ltd's board had, months prior to the execution of the Deed of Variation, decided to delay any attempt to pursue an IPO;
- Failing to disclose that Ellume Ltd was, and had for months been, insolvent;
- Failing to disclose that Ellume Ltd's directors had been operating under Safe Harbour provisions of Australia's insolvency laws.

70. Parsons made these misrepresentations despite the fact that he knew, or should have known with the exercise of reasonable diligence, that the information provided was false and that the information omitted was necessary for Tiber Creek to understand the truth of the matter.

71. Tiber Creek was not aware of the falsity of these misrepresentations, had no knowledge of the omitted information, and reasonably relied upon the information provided by Parsons.

72. These misrepresentations and omissions were material to Tiber Creek. Had the truth been disclosed, Tiber Creek would not have agreed to the Deed of Variation and instead would have pursued its claims against Ellume USA.

73. As a result of its reliance on these misrepresentations and omissions, Tiber Creek has suffered significant damages. ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ The precise amount of these damages will

be proved at trial, but are likely to amount to millions of dollars in compensatory damages alone.

74. Parsons's conduct was so negligent, malicious, wanton, oppressive, and in reckless and/or conscious disregard of the rights of Tiber Creek that an award of punitive damages is appropriate

WHEREFORE, Tiber Creek demands judgment in its favor and respectfully requests that the Court enter an order as follows:

    A.    Declaring that the Deed of Variation is void and unenforceable because it was procured by fraud, and that the Services Agreement between Ellume USA and Tiber Creek continues unmodified;

    B.    In the alternative, finding in favor of Tiber Creek and against Parsons and awarding Tiber Creek damages in an amount to be determined at trial, including punitive damages;

    C.    Awarding Tiber Creek its costs; and

    D.    Awarding Tiber Creek any other relief that this Court deems just.

| | |
|---|---|
| Dated: March 3, 2023 | FAEGRE DRINKER BIDDLE & REATH LLP |
| | By: */s/ Dawn B. Williams* |
| | Dawn B. Williams (VA Bar #71560) |
| | 1500 K Street, N.W., Ste. 1100 |
| | Washington, DC 20005 |
| | Telephone: 202-230-5226 |
| | Fax: 202-842-8465 |
| | dawn.williams@faegredrinker.com |
| | |
| | Jason P. Gosselin |
| | John M. Moore |
| | One Logan Square, Ste. 2000 |
| | Philadelphia, PA 19103 |
| | Telephone: 215-988-3371 |
| | Fax: 215-988-2757 |
| | jason.gosselin@faegredrinker.com |
| | john.moore@faegredrinker.com |
| | |
| | (*pro hac vice* applications forthcoming for Attorneys Gosselin and Moore) |
| | |
| | *Attorneys for Tiber Creek Partners, LLC* |